(June, 1877.)

*F. H. Canfield* for the original libelant.

*H. H. Swan* for libelant Bogle.

---

*Superior Court of Detroit.*

CHARLES WEBER

vs.

THE DETROIT DAILY POST.

*Libel—Distinction Between a Man and His Hall.*

Describing the disreputable character of those attending a ball at defendant's hall is not *per se* a libel upon the owner of the hall.

The plaintiff sued for damages growing out of an alleged libel committed by the defendant, which had stated that an assemblage of disreputable citizens had held high carnival at plaintiff's hall, situate in the city of Detroit.

On the trial before Judge Cochrane and a jury, the plaintiff testified that his hall bore a good reputation in the community where it was situated.

Upon cross-examination he said that the party which the *Post* characterized as an assemblage of disreputable characters was a private affair, admitting, however,

that he sat in the box office and sold tickets to all who asked for them.

The first witness for the defense was H. Smith Harris, the reporter who wrote the alleged libelous article. Mr. Harris stated that his statement regarding the character of the persons who attended the gathering was obtained from the police records.

Patrolman Shank was placed upon the stand for the purpose of testifying as to the reputation of Pinder and Cronin, who were said by the *Post* to be pickpockets.

A long argument followed as to the admissibility of this testimony unless the officer knew of his own knowledge that the men were pickpockets, thieves or bad characters.

The court held that the defense could show the reputation of the parties who attended the hall on the night in question, although Mr. Chipman argued that a man might be caught in bad company, or at one time be detected in some crime and yet have always borne a good character, citing the case of Thircott, the New York stock broker, who was recently detected in robbing houses where he had gone as a guest, and of Barker, a son-in-law of Commodore Vanderbilt, who was arrested on Sunday last for the theft of a watch. Judge Cochrane, however, said it was laid down in the old English law that it is the presumption that men visit bad places for bad purposes, no matter whether they be priest or layman.

Patrolman Shank then gave an account of his finding certain of the persons who attended Weber's in a house of bad repute, on the corner of Lafayette and Russell streets, and of arresting them for disturbing the peace.

After the testimony was in on both sides, the defense raised the legal question that no libel had been proved against the plaintiff; that describing those who were at his hall as disreputable was a very different thing from charging plaintiff with being disreputable.

After argument by counsel,

The Court, COCHRANE, J., Held:   That the publication was not libelous.

Thereupon plaintiff withdrew a juror, and submitted to a nonsuit, with leave to move to set it aside.

The case was never re-tried.

(July, 1876.)

*J. Logan Chipman* for Plaintiff.
*H. M. Cheever* for Defendant.